

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MKM:DGR
F. #2017R00959

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 12, 2018

By ECF

The Honorable Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ruslan Mirvis
                Criminal Docket No. 17-273 (FB)

Dear Judge Tiscione:

        The government submits this letter in advance of the bail hearing scheduled in this case today at 2:00 p.m. For the reasons stated below, the Court should deny the defendant's motion because he fails to provide any new "material" information sufficient to re-open and reconsider the prior permanent order of detention, and there continue to be no combination of conditions sufficient to reasonably ensure the safety of the community and the defendant's continued appearance in this case.

I.     Background

    A.    The Offense Conduct

        For months, the defendant, a 35 year-old man, posed as a young boy on Facebook and sexually exploited child victims over the Internet. The defendant used a Facebook profile with username "B.B."[1] (the "B.B. Facebook") to communicate with children across the United States in order to have them produce sexually explicit images and videos of themselves and other minor children and transmit them to the defendant.

---

[1] The subsequent investigation revealed that the username assigned to the defendant's fake Facebook profile is the name of an actual minor child. To protect the identity of this minor, reference is made only to the initials "B.B."

One of the defendant's victims was Jane Doe, a minor female who was approximately 12 to 15 years old. The defendant exploited Jane Doe by directing her to create and transmit multiple sexually explicit images and videos of herself over the Internet. The content of the B.B. Facebook account obtained by the Federal Bureau of Investigation ("FBI") revealed that the defendant would threaten, harass, and intimidate his victims, including Jane Doe, if they hesitated, declined, or ceased sending him sexually explicit images and videos.[2]

For example, when Jane Doe expressed reluctance to sending additional images, the defendant told Jane Doe he would "be sending [the victim's family] all the pictures." The defendant used these threats to cause the production of more child pornography. Indeed, after the defendant threatened Jane Doe, he instructed her to sexually abuse her minor sibling, who was approximately two to four years old, and to electronically capture and transmit it back to the defendant. Shortly thereafter, as directed by the defendant, the defendant received multiple sexually explicit images from Jane Doe, depicting Jane Doe performing oral sex on her minor sibling.

On April 21, 2017, FBI special agents and members of the New York City Police Department, executed a search warrant at the defendant's home. At that time, FBI special agents spoke to the defendant. The defendant told the agents that he created the B.B. Facebook account and used it to communicate with minors, and that he directed minors to take photos and videos of themselves engaged in sexually explicit conduct. He also admitted that he would threaten those victims in connection with his production of child pornography. Thereafter, the defendant was arrested.

B. The Court Ordered the Defendant Detained Pending Trial

Following the defendant's arrest, he was arraigned before the Honorable Peggy Kuo. (April 21, 2017 Tr. ("4/21/17 Tr.") at 2:9–3:11.) At that time, the government sought a permanent order of detention pending trial. (Id. at 3:13.) The defendant asked to be released on a $25,000 bond secured by the signature of the defendant' mother. (Id. at 5:4–17.) Following arguments from the parties, Judge Kuo entered a permanent order of detention "with leave to reopen if there's a bail package presented." (Id. at 9:1–2.)

On May 12, 2017, the defendant made a second bail application before the Honorable Cheryl L. Pollak. (May 12, 2017 Tr. ("5/21/17 Tr.") at 2:21.) At that time, the defendant proposed a bail package that included a $150,000 bond, secured by four suretors: his mother, his brother, an aunt and a family friend. (Id.) Additionally, the defendant proposed home confinement, with "significant restrictions to his access to any electronic devices" and the other "standard conditions" in child exploitation cases.

---

[2] Based on the investigation to date, the FBI has determined that there are more than thirteen children from across the country whom the defendant sought out to exploit.

Judge Pollak denied the defendant's application, and explicitly stated, "I find that there are no conditions or combination of conditions that would ensure the safety of the community here." (Id. at 9:2–4.) Citing the seriousness of the allegations, the danger to the community and the risk of flight the defendant presents, Judge Pollak continued the permanent order of detention. (Id. at 9:17.) Judge Pollak made her reasoning clear on the record:

> This is perhaps the most heinous series of allegations relating to child pornography that I have seen and I've been doing this now for quite a while. This is an instance where the defendant is alleged not only to have viewed already existing child pornography but he's alleged to have actually encouraged young children to create it, not only with themselves but with their young siblings and I understand the concept of Facebook catching this quickly, thank Heavens, but if the government is correct and there are actually 13 children that he's been involved with, that's pretty extensive within a one-month's period of time.
>
> And I just don't find that the bail package that you've offered is sufficient to overcome these concerns. He is a risk of flight. . . But most importantly, my feeling is he is a risk of danger to the community and I am going to continue him on detention.

(Id. at 9:5-17.)

    C.    The Indictment

On May 22, 2017, a grand jury in the Eastern District of New York returned an indictment against the defendant, charging him with the production and receipt of child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2252(a)(2) (the "Indictment"). On June 1, 2017, the defendant was arraigned on the charges in the Indictment. (Docket Entry No. 10.)

II.    Discussion

The defendant moves to re-open his bail hearing and to reconsider the permanent order of detention entered against him. Because the defendant has presented no new material information to the Court warranting re-opening or reconsideration of the prior order of detention, and because no combination of conditions would ensure the safety of the community and his presence at future proceedings, the Court should deny his application.

    A.    Legal Standard

The defendant is charged with producing and receiving child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2252(a)(2), which charges carry a statutory

presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E).

The presumption is "subject to rebuttal by the defendant who must 'introduce some evidence contrary to the presumed fact.'" United States v. Gilkeson, 413 F. Supp. 2d 270, 295 (N.D.N.Y. 2006). As with any presumption case, once this burden of production has been satisfied, the government bears the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant presents a risk of flight." Id. The "'clear and convincing evidence' [standard] with respect to a defendant's danger to the community . . . means something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.'" United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

To determine whether the presumptions of dangerousness and flight risk are rebutted by a defendant, the Court must consider:

(1) the nature and circumstances of the crime charged;

(2) the weight of the evidence against the defendant;

(3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history and past conduct; and

(4) the nature and seriousness of the danger to the community or to an individual that would be posed by release.

18 U.S.C. § 3142(g). Once a defendant has met his burden of production relating to danger to the community and risk of flight, the presumption in favor of detention does not disappear entirely, but remains a factor for the court to consider. Mercedes, 254 F.3d at 436.

After a judicial officer has made a finding that no condition or combinations of conditions will reasonably assure the defendant's appearance as required, the court may reopen a detention hearing at any time upon a finding that there exists "information . . . that was not known to the movant at the time of the [detention] hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required." 18 U.S.C. § 3142 (f)(2)(B); see also United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987). Courts interpreting this language have repeatedly confirmed that "[a] bail hearing should not be reopened on the basis of information that was available to the defendant at the time of the hearing." United States v. Lewis, 2016 WL 6902198, at *2 (S.D.N.Y. Nov. 16, 2016); see also United States v. Dillon, 938 F.2d 1412, 1415 (1st Cir. 1991) (per curiam). "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." United States v. Rodriguez, 2012 WL 6690197, at *8 (W.D.N.Y. Dec.

4

21, 2012) (internal quotation marks omitted).

    B.    <u>The Defendant Should Not Be Permitted to Re-Open the Bail Hearing</u>

Because the defendant presents no new, material information not known to him at the prior hearing, the Court should deny his attempt to reopen the prior bail hearing, at which Judge Pollak explicitly found the defendant to be a risk of flight and a danger to the community. First, the defendant presents the same arguments and bail package rejected by the Judge Kuo and Judge Pollak. (4/21/2017 Tr. 4:12-5:12 (citing the defendant's "lack of international ties," his parents' ill health, and financial assistance previously provided by the defendant to his parents, and proposing "very strict guidelines" for computer access).) Indeed, every aspect of the defendant's current proposal was available for the Court's consideration at the time it entered a permanent order of detention.

Second, to the extent the defendant relies on his reported instances of mistreatment at the Metropolitan Detention Center, even if credited, they are unconnected to the central issue before the Court: the defendant's dangerousness and risk of flight. These issues, while serious, do not provide a basis for pre-trial release.

Accordingly, because the defendant fails to present any new information warranting reopening or reconsideration of the prior determinations that he is a danger to the community and a risk of flight such that no combination of conditions would be sufficient for his release, the Court should deny his motion.

    C.    <u>The Defendant Cannot Rebut the Presumption That He is a Danger to the Community and a Risk of Flight</u>

Even if the defendant could re-open his bail hearing, he cannot rebut the presumption that he is a risk of flight and a danger to the community. Indeed, given the facts underlying the charges, the serious risks the defendant presents are clear. As Judge Pollak found, the alleged conduct is heinous. It reflects a deliberate and concerted effort by the defendant to use the Internet to locate vulnerable children to exploit and to then use those child victims to create sexually explicit material.

The manner in which he executed his scheme underscores the risks to the community and the minimal effect pre-trial conditions of release would have. The defendant perpetrated his scheme via Facebook, a social media platform that, unlike computer-specific software can be accessed from any Internet-connected device from anywhere in the country at any time. Additionally, the volume of evidence seized from the B.B. Facebook laying out the defendant's scheme alongside the defendant clear statements to the FBI admitting to his scheme, demonstrate that the evidence of the defendant's guilt is overwhelming. When combined with the 15-year mandatory minimum sentence applicable to these charges, there is a powerful incentive to flee prosecution should the defendant be released.

Taken together, as Judge Pollak found at the defendant's last bail hearing, the defendant is both a danger to the community and a risk of flight. Because there are no

combination of conditions that could reasonably assure his appearance or the safety of the community, he must remain in the custody of the Bureau of Prisons pending trial.

III.     Conclusion

For the reasons set forth above, the defendant poses a significant danger to the community if released pending trial, and no combination of bail conditions will ensure the safety of the community and the defendant's continued appearance before the Court.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/Drew G. Rolle
Drew G. Rolle
Assistant U.S. Attorney
(718) 254-6783

cc: Amanda David, Esq. (Counsel for the Defendant)