

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

KDE:DGR
F. #2017R00959

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 22, 2020

By ECF

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Ruslan Mirvis
                  Criminal Docket No. 17-273 (FB)

Dear Judge Block:

        The government respectfully submits this letter in opposition to defendant Ruslan Mirvis's (hereinafter "Mirvis" and "the defendant") motion for release on bail due to his concern about the COVID-19 pandemic. For the reasons set forth below, the Court should reject the defendant's arguments and uphold the permanent order of detention previously entered in this case based on the defendant's sexual abuse of at least thirteen identified child victims, including a two year old child.[1]

I.    Background

        A.    The Defendant's Sexual Exploitation of Minors

        As recounted in the government's prior detention memorandum filed in opposition to the defendant's last request for bail,[2] the defendant is a sexual predator who targeted young children on Facebook. Prior to his arrest in April 2017, the defendant posed as a young boy on Facebook and convinced unsuspecting children to create and send him sexually explicit images

---

[1] Under the Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(4), all victims of the defendant's crimes must be afforded an opportunity to be heard at any hearing on the defendant's motion for bail. 18 U.S.C. § 3771(a)(4) ("A crime victim has . . . [t]he right to be reasonably heard at any public proceeding in the district court involving release [of the defendant].").

[2] The government's January 12, 2018 memorandum is incorporated herein by reference. (ECF No. 17).

and videos of themselves. After his child victims transmitted those images, the defendant would compel them to send more by threatening to send the initial images to the victims' families.

In the course of his exploitation of Jane Doe, a minor female who was approximately 12 to 15 years old, the defendant told Jane Doe he would "be sending [the victim's family] all the pictures" after Jane Doe expressed reluctance to send addition photographs. After the defendant threatened Jane Doe, he instructed her to sexually abuse her minor sibling, who was approximately two to four years old, and to electronically capture and transmit the abuse back to the defendant. Shortly thereafter, as directed by the defendant, Jane Doe sent the defendant received multiple sexually explicit images depicting Jane Doe performing oral sex on her minor sibling.

The defendant admitted much of this conduct on April 21, 2017 when he was arrested by agents with the Federal Bureau of Investigation. At that time, the defendant admitted that he created the Facebook account at issue and used it to communicate with minors, and that he directed minors to take photos and videos of themselves engaged in sexually explicit conduct. He also admitted that he would threaten those victims in connection with his production of child pornography. As the government has explained at prior court appearances, following revelation of the defendant's exploitation, at least one of the defendant's victims attempted self-harm.

B. The Defendant's Prior Bail Applications

Since his arrest, the defendant has asked three different magistrate judges to release him, and each judge denied his request. First, the day of his arraignment, Magistrate Judge Peggy Kuo rejected the defendant's proposed $25,000 bond to be signed by the defendant's mother and she entered a permanent order of detention. (See Apr. 21, 2017 Hr'g.) The defendant renewed his bail application on May 12, 2017, increasing the proposed bond amount to $150,000 and proposing four suretors: his mother, his brother, an aunt and a family friend. (May 12, 2017 Tr. ("5/21/17 Tr.") at 2:21.) Rejecting that application, Magistrate Judge Cheryl Pollak found that there were "no conditions or combination of conditions that would ensure the safety of the community here." (Id. at 9:2–4.) Assessing the seriousness of the defendant's charged conduct, Judge Pollak observed that this case presented "perhaps the most heinous series of allegations relating to child pornography that I have seen and I've been doing this now for quite a while." (Id. at 9:5–17.) Finally, on January 12, 2018, Magistrate Judge Steven Tiscione rejected the defendant's third bail application, which relied on a nearly identical bond to that rejected by Judge Pollak.

II. Discussion

Although multiple judges have found that the defendant is a danger to the community in light of the clear evidence of his sexual exploitation of multiple children, the defendant now asserts that "his release on bail would make the community safer than would his continued incarceration." (Def. Mot. 2.) According to the defendant, he must be released because (1) the COVID-19 pandemic constitutes a "changed circumstance" under 18 U.S.C. § 3142(f) that "materially" affects the assessment of his dangerousness and risk of flight under the Bail Reform Act; and (2) he must be temporarily released from custody under 18 U.S.C. § 3142(i) in light of the pandemic and to ensure he has access to counsel. (Def. Mot. 3-5). For the reasons set forth

2

below, these arguments lack merit and the Court should deny the defendant's renewed application for release.

> A. There is No Basis to Reverse the Prior Judicial Findings That Mirvis is a Danger to the Community and Risk of Flight

As discussed above, three different judges have rejected the defendant's applications for pre-trial release, including Magistrate Judge Pollak, who expressly noted that this case involved "the most heinous series of allegations relating to child pornography that" she had ever seen. Those judicial findings under the Bail Reform Act remain just as true today and support the defendant's continued detention.

After a judicial officer has made a finding that no condition or combinations of conditions will reasonably assure the defendant's appearance as required, the court may reopen a detention hearing only upon a finding that there exists "information . . . that was not known to the movant at the time of the [detention] hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required." 18 U.S.C. § 3142 (f)(2)(B); see also United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987). Courts interpreting this language have repeatedly confirmed that "[a] bail hearing should not be reopened on the basis of information that was available to the defendant at the time of the hearing." United States v. Lewis, 2016 WL 6902198, at *2 (S.D.N.Y. Nov. 16, 2016); see also United States v. Dillon, 938 F.2d 1412, 1415 (1st Cir. 1991) (per curiam). "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." United States v. Rodriguez, 2012 WL 6690197, at *8 (W.D.N.Y. Dec. 21, 2012) (internal quotation marks omitted).

In assessing whether a defendant can be released on bail, the Bail Reform Act lists four factors to be considered: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g). The four factors articulated in the Bail Reform Act typically guide courts' analysis as to both risk of flight and dangerousness. See, e.g., United States v. Horton, No. 16-CR-212 (LAK), 2016 WL 6126669, at *8-13 (S.D.N.Y. Oct. 20, 2016). Here, consistent with the prior judicial findings upholding Mirvis' detention order, each factor militates strongly towards detention of the defendant. Moreover, the Bail Reform Act imposes a "presumption" that defendants charged of sexual exploitation of minors will pose a risk of flight and a danger. 18 U.S.C. § 3142(e)(2).

Here, while the COVID-19 pandemic is, of course, a new factor not previously considered at the time of the prior detention order, it is not a factor that has any "material bearing on the issue whether there are conditions of release" that could protect the community from the defendant and ensure his appearance. As the government has shown at each of the three prior detention hearings in this case, the defendant's danger to the community is not only statutorily presumed, but credibly shown through the evidence of his sexual exploitation of children. The defendant is a child predator. He identified child victims online, posed as a peer to gain their trust, and exploited them for his own gratification, including by directing them to sexually exploit other minor children and videotape that sexual abuse for his enjoyment.

3

The manner in which he executed his scheme underscores the risks to the community and the minimal effect pre-trial conditions of release would have. The defendant perpetrated his scheme via Facebook, a social media platform that, unlike computer-specific software, can be accessed from any Internet-connected device from anywhere in the country at any time. Additionally, the volume of evidence seized from the defendant's Facebook account laying out the defendant's scheme alongside the defendant's clear statements to the FBI admitting to his scheme, demonstrate that the evidence in this case is overwhelming. Combined with the fact that he faces a 15-year mandatory minimum sentence on Count One, there is a powerful incentive to flee prosecution should the defendant be released. Indeed, that incentive has only increased in the three years Mirvis has been held in custody.

As the magistrate judges who denied the defendant's prior applications found, the facts in this case establish that the defendant is both a danger to the community and a risk of flight if released. The COVID-19 pandemic and the health issues identified by the defendant do nothing to mitigate those risks. The defendant is 36 years old, and was not identified by the MDC medical staff as a "high risk" inmate. But even crediting the seriousness of the defendant's health issues, they do not warrant his release. <u>First</u>, the defendant committed these crimes while presumably suffering from the very health conditions he now points to as mitigating his risk of dangerousness. <u>Second</u>, while defendant argues that shelter-in-place orders and his family members' surveillance of him mitigate his danger to the community and risk of flight, those arguments ignore the fact that Mirvis' crimes were all committed from the comfort of his own home while living with some of the very people he proposes as suretors. There is no reason to believe that confinement in that home would mitigate his dangerousness.

<u>Third</u>, and finally, a growing body of cases in this district and the Southern District of New York have repeatedly denied bail for defendants suffering from conditions that are even more serious than those identified by the defendant given the danger to the community and risk of flight those defendants posed. <u>See, e.g.</u>, <u>United States v. Rashawn Smith</u>, No. 18-CR-33 (S-1) (NGG) (rejecting bail application for defendant with asthma, citing his danger to the community); <u>United States v. Scorcia</u>, No. 19-CR-442 (ILG), ECF No. 254 (E.D.N.Y. Mar. 27, 2020) (ruling that court had already determined defendant was a danger to the community and declining to release defendant based on COVID-19 pandemic for 54-year-old who cited poor health and family history and claimed restrictions at MDC interfered with ability to prepare a defense); <u>United States v. Amato</u>, No. 19-CR-442 (ILG), ECF No. 237 (E.D.N.Y. Mar. 20, 2020) (ruling that court had already determined defendant was a danger to the community and declining to release defendant based on COVID-19 pandemic for 61- year old with asthma who MDC identified as "high-risk"); <u>United States v. Hamilton</u>, No. 19-CR-54 (NGG) 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (declining to release defendant charged with two counts of murder while engaged in narcotics trafficking who MDC identified as "high risk" finding that defendant had not "met his burden to rebut the presumption of danger to the community that attaches based on" the charged acts of violence); <u>United States v. Rafael Fabian</u>, 16-CR-131 (S-1) (DLI) (E.D.N.Y. Apr. 16, 2020) (denying post-conviction bail application for inmate identified by MDC as "high risk" in light of asthma, finding that the defendant posed a danger and risk of flight and that the "the protocols in place by the MDC, defendant's condition can be treated appropriately").

This case is no different. The government's proof is overwhelming that the defendant sought out and sexually exploited multiple children over the Internet, including a child

4

as young as two years old whom the defendant directed another child to abuse on video. Consistent with the findings of the three prior magistrate judges in this case, the defendant poses a danger to the community and a risk of flight if released. Because there are no combination of conditions that could ensure the safety of the community and his continued appearance, his renewed bail application should be denied.

### B. There Are No "Exceptional Circumstances" Warranting Release Under 18 U.S.C. § 3142(i)

In the alternative, the defendant asks the Court to temporarily release him pursuant to 18 U.S.C. § 3142(i), which provides that a "judicial officer may, by subsequent order, permit the temporary release of [a] person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant asserts that the COVID-19 pandemic has created an exceptional circumstance because (1) his ability to meet with defense counsel has been hindered by restrictions on legal visits put in place at the MDC to mitigate the spread of the novel coronavirus and (2) the health risks posed by COVID-19 warrant temporary release to protect him from being infected. Both arguments lack merit.

According to the defendant, because the Court indicated a desire to set a trial date at the next status conference if the parties fail to negotiate a plea agreement, he has now entered a "critical phase" in his criminal case that warrants temporary release because he must have "greater access to counsel than is available under MDC Brooklyn's current restrictions on legal visits." (Def. Mot. 2.) In support of that argument, the defendant relies on three decisions from the Southern District of New York, all of which are inapposite because, unlike Mirvis, they involved defendants with trials or hearing that were to begin imminently. (Def. Mot. 5.) In United States Stephens, the district court released the defendant citing, among other things the fact that the evidentiary hearing on the defendant's supervised release violation was scheduled to begin just one week from the date of the Court's order. No. 15-CR-95 (AJN), 2020 WL 129515, at *4-5 (S.D.N.Y. Mar. 19, 2020). In United States v. Chandler, the defendant's trial was scheduled to begin 41 days from the date of the district court's order. No. 19-CR-867 (PAC) (S.D.N.Y. Mar. 31, 2020), ECF No. 19 at 2. Likewise, in United States v. Hudson, at the time of the defendant's motion, trial was scheduled to begin in one month and the government had recently secured a third superseding indictment expanding the scope of the case. No. 19-CR-496 (CM) (S.D.N.Y. Mar. 19, 2020), ECF Nos. 67, 68, and 69.

In addition to being factually distinguishable from this case, each of the decisions cited by the defendant pre-date the Bureau of Prisons' April 8, 2020 Protocol for Attorney Calls and Teleconference Hearings at the MCC, MDC, and GEO. These protocols are designed to ensure that defendants' telephonic access to defense counsel will continue through pre-scheduled calls between defendants and their counsel. As explained in those protocols, MDC has stated that, in addition to this set of pre-scheduled calls, MDC will review its ability to increase the capacity for additional legal calls.

As Judge Kuntz recently underscored in denying an application for release under 3142(i), "the analysis of whether a particular defendant should be released [under 3142(i)] must

5

be done on a case-by-case basis." United States v. Mattei, No. 19-CR-283 (WFK), ECF No. 22. Given the backdrop of this case, the defendant's argument that temporary release is necessary for him to prepare a defense is meritless. There is no trial date. The next status conference is scheduled for June 4, 2020. And as the defendant informed the court at the last status conference, after many months of delays by the defense, he has now formally asked the government in a written submission to consider a more lenient plea offer. Put simply, there is nothing exceptional about the posture of the defendant's case and there is no basis to grant the exceptional relief he requests.

The defendant's argument that his ongoing medical issues warrant temporary release is also meritless. The government recognizes the importance of the health issues the defendant identifies in his motion; however, they do not constitute exceptional circumstances warranting release under Section 3142(i). Unlike defendants in the cases cited in his motion, the defendant was not identified as high-risk by the MDC medical staff as part of its response to COVID-19. As noted above, in numerous cases in this district and the Southern District of New York high-risk defendants suffering from conditions even more serious than those identified by the defendant were denied release because they, like Mirvis, posed a substantial danger to the community and risk of flight if released. In addition, although the defendant points to a hypothetical fear of no longer receiving medical treatment, both his letter and his accompanying medical records make clear that the defendant has, and continues, to receive medical treatment for his ailments.

Importantly, the MDC continues to work to mitigate the spread of COVID-19 and protect the defendant and all other inmates housed there. The defendant's application largely ignores the steps that the MDC has taken to address the COVID-19 pandemic and ensure the continued health and safety of the defendant, his fellow inmates, staff and other personnel. Mirvis' argument relies on generalized assertions made through news articles, facts from other BOP facilities in other states, and copies of generic declarations filed by medical doctors in wholly separate cases in other districts. (See Exs. A to E annexed to Def. Mot.). Chief Judge Roslynn R. Mauskopf recently assessed an affidavit filed by Dr. Jonathan Giftos—whose affidavit the defendant filed as Exhibit B to his motion—noting that he "opine[s] of the harms that that could arise if a virus were allowed to spiral out of control within a prison setting generally," but fails to "take[] into account the actual conditions at MDC, or the actual steps that the Federal Bureau of Prison has taken both nationally and locally to mitigate the spread of COVID-19 within all of its facilities, and specifically, within the MDC." United States v. Amador-Rios, No. 18-CR-398, ECF No. 99 at 4-5 (emphases in original).

The actual steps MDC has taken are important, and as Chief Judge Mauskopf noted in denying the application in Amador-Rios, "There is nothing to suggest that the parade of horribles that [Dr.] Giftos . . . speculate[s] might happen is actually happening or is imminent at MDC." (Id. at 5.) Here are the current facts: The BOP has implemented national measures to mitigate the spread of COVID-19 within prisons. See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. These measures, which have been implemented at the MDC, include the following:

- Suspension of all social and legal visits: Social visits and legal visits have been suspended for 30 days, although confidential attorney calls, as

6

>    discussed above, are being provided. Inmates will be provided additional inmate telephone minutes each month.
>
> - <u>Inmate movement</u>: All inmate facility transfers have been suspended for 30 days, with exceptions permitted for forensic studies or medical or mental health treatment.
>
> - <u>Screening and testing of inmates</u>: All newly-arriving BOP inmates are screened for COVID-19 exposure risk factors and symptoms. Inmates with exposure risk factors are quarantined. In addition, inmates exhibiting flu-like symptoms are isolated (either to single rooms or with other patients) and tested for COVID-19 in accordance with local health authority protocols.
>
> - <u>Modified Operations</u>: The BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, among other modifications specific to each facility.

Moreover, based on a March 18, 2020 letter from the MCC and MDC to the Honorable Colleen McMahon, Chief Judge for the United States District Court in the Southern District of New York, the government is aware of the following additional measures that the MDC has taken in light of COVID-19:

> - Cleaning supplies are issued once a week. They are available on each housing unit, and staff have been instructed regarding whom to contact should additional supplies be necessary.
>
> - Inmate orderlies are cleaning the common areas of the institution, and every inmate has been reminded and instructed to continue to wipe down and sanitize their cells.
>
> - Inmates have also been provided instruction via town halls regarding hygiene, and the same guidance is available on TRULINCS.
>
> - Showers are available on a daily basis.
>
> - Unit team staff are available on a daily basis for inmates to raise issues concerning food, shoes, and medical care.

<u>See</u> Letter from Warden M. Licon-Vitale (MCC) and Warden D. Edge (MDC) to Chief Judge Coleen McMahon (Mar. 18, 2020). In short, the BOP is monitoring the status of COVID-19 and is taking emergency steps to ensure the safety of its staff, inmates and the public. As a result, the defendant's arguments that he presents an exceptional circumstance warranting temporary release should be rejected.

Case 1:17-cr-00273-FB-ST   Document 42   Filed 04/22/20   Page 8 of 8 PageID #: 314

III. <u>Conclusion</u>

        Accordingly, because the defendant poses a substantial danger to the community and a risk of flight, and because there are otherwise no exception circumstances warranting his temporary release, the Court should deny his motion.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney

By:   /s/Drew G. Rolle
        Drew G. Rolle
        Assistant U.S. Attorney
        (718) 254-6783

cc:   Michael Hueston, Esq. (Counsel to the defendant) (by ECF)
      Dorea Silverman, Esq. (Counsel to the defendant) (by ECF)