# MICHAEL HUESTON
### ATTORNEY AT LAW

| | |
|---|---|
| 16 COURT STREET | Tel: (718) 246-2900 |
| SUITE 1800 | Fax: (718) 246-2903 |
| BROOKLYN, NEW YORK 11241 | Email: mhueston@nyc.rr.com |

ADMITTED NY

April 28, 2020

**BY ECF**
The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  *United States v. Mirvis*, 17 Cr. 273 (FB)

Dear Judge Block:

      Ruslan Mirvis respectfully submits this letter in further support of his April 16, 2020 motion for pretrial release ("Def. Mot.") and in reply to the government's April 22, 2020 response in opposition ("Gov. Opp."). The government opposes Mr. Mirvis' motion with blanket assurances by the Bureau of Prisons ("BOP") that it is providing adequate care to inmates, when in fact COVID-19 infections have grown within the BOP from a single confirmed case on March 21, 2020 to 1,918 confirmed cases as of April 27, 2020, including 28 dead inmates. Indeed, according to the latest warden's report, six inmates and 26 staff members at MDC Brooklyn are confirmed positive; only twelve inmates have been tested to date.[1]

**A.**     **Changed Circumstances**

    **1.**   **Conditions at MDC Brooklyn**

      Twelve days ago, MDC Brooklyn was forced to acknowledge its limited ability to test inmates due to the shortage of available tests. Declaration of Lieutenant Commander D. Jordan ("Jordan Decl."), *Chunn et al. v. Edge*, 20 Civ. 1590 (RPK), Dkt. No. 47-1, ¶¶ 45, 47. Prior to that date, prosecutors had used the small number of positive test results at MDC Brooklyn as proof that COVID-19 was not widespread within the facility—and courts relied on that

---

[1] BOP, COVID-19 Cases, *https://www.bop.gov/coronavirus* (last accessed April 27, 2020); April 23, 2020 Report from the Bureau of Prisons regarding the Metropolitan Detention Center and Metropolitan Correctional Center, at 3, *https://www.nyed.uscourts.gov/pub/bop/MDC_MCC_20200423_043300.pdf*.

Honorable Frederic Block                                              *United States v. Mirvis*, 17 Cr. 273 (FB)
April 28, 2020

information.[2] *See, e.g.*, Order, *Chunn*, 20 Civ. 1590, Dkt. No. 43, at 2 ("Respondent is presently relying on the relative paucity of positive tests to undercut petitioners' argument").

Prosecutors have since acknowledged that some MDC inmates have required hospitalization, *id.*, Dkt. No. 62-1 at 28-29, and that multiple units on multiple floors are being used for medical isolation and quarantine. *Id.*, Dkt. No. 51 at 3-4. When a facility has multiple pandemic cases that are not confined to a single unit or floor, BOP describes the outbreak as "widespread."[3] COVID-19 is widespread throughout MDC Brooklyn.

It has become increasingly evident that MDC Brooklyn does not have the COVID-19 pandemic under control. Judge Ross cited the Jordan Declaration in an opinion granting pretrial release to a defendant with moderate asthma. *United States v. Jackson*, 19-CR-356 (ARR), Dkt. No. 50, at 6-7 (April 17, 2020). After evaluating "the information currently available about the risks of exposure to the coronavirus at MDC", Judge Ross was "not satisfied that the measures currently in place sufficiently protect [the defendant]'s health." *Id*.

## 2. Mass Testing Reveals Prisons Have High Rates of Asymptomatic Inmates

Mass testing in the prison systems of several states revealed that infection was widespread throughout their prisons, and the majority of inmates who tested positive were asymptomatic.[4] From the high number of positive but asymptomatic inmates in prison systems in multiple states, a reasonable inference is that this pattern is prevalent in all prison systems. BOP implicitly acknowledges this likelihood.[5] This means that action plans like BOP's, from which the government quotes, that focus primarily on identifying and isolating symptomatic individuals have a significant design flaw. They do not prevent transmission to inmates with underlying

---

[2] *See, e.g., United States v. Amador-Rios*, 18-CR-398 (RRM), Dkt. No. 99 at 4-5 (E.D.N.Y. April 12, 2020) ("As of April 9, three inmates and nine staff members at the MDC have tested positive for the virus. There is nothing to suggest that the parade of horribles that Drs. Giftos and Williams speculate might happen is actually happening or is imminent at MDC."); *United States v. Jackson*, 20-CR-46 (EM), Dkt. 16 at 6 (E.D.N.Y. April 6, 2020) ("based on the most current information available, the virus's spread at MDC Brooklyn...appears to remain relatively limited."); *United States v. Rodriguez*, No.16-CR-167 (LAP) (S.D.N.Y. April 14, 2020) ("as set out in the Government's papers...[BOP's] measures have provided quite successful so far. As of April 7, the MDC...reported a total two inmates who tested positive for COVID-19...approximately 0.12% of MDC inmates[.]").

[3] BOP, Pandemic Influenza Plan, Module 1 ("PIP-1"), at 18, *https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf*.

[4] In four U.S. state prisons, nearly 3,300 inmates test positive for coronavirus—96% without symptoms, Reuters (April 25, 2020), *https://www.reuters.com/article/us-health-coronavirus-prisons-testing-in/in-four-u-s-state-prisons-nearly-3300-inmates-test-positive-for-coronavirus-96-without-symptoms-idUSKCN2270RX*.

[5] BOP, Press Releases, Bureau of Prisons Expands COVID-19 Testing, *https://www.bop.gov/resources/news/pdfs/20200423_press_release_covid19_testing.pdf*.

2

Honorable Frederic Block  　　　　　　　　　　　　　　　　*United States v. Mirvis*, 17 Cr. 273 (FB)
April 28, 2020

health conditions.  *See, e.g., Wilson, et al. v. Williams, et al.*, No. 20-CV-00794 (JG), Dkt. No. 22 at 4 (N.D. Ohio April 22, 2020) (granting emergency relief to vulnerable inmates at FCI Elkton). The virus spreads so "quickly and insidiously...among a tightly quartered prison population" that even comprehensive efforts cannot protect vulnerable inmates. *Id*.

### 3. Mr. Mirvis' Health Risks

John Sanderson, M.D., a primary care physician with 30 years' experience, has reviewed the medical records that were provided as Exhibit G to Mr. Mirvis' April 16, 2020 motion.  Dr. Sanderson confirmed that Mr. Mirvis has three conditions that place him at increased risk of severe health consequences from COVID-19.  Exhibit ("Ex.") A (Sanderson Letter and CV.)  In addition, since we filed our opening submission, new studies have shown that obesity appears to be one of the most significant predictors for severe coronavirus illness, particularly for men under 60.[6]  Male patients under 60 with a BMI between 30 and 34 were twice as likely to require hospital admission and patients with a BMI of 35 or greater—Mr. Mirvis' category—were three times more likely to require a ventilator. Ex. B (Journal Articles).

### 4. Discussion

In *United States v. Jackson*, Judge Ross found that reconsideration of detention was warranted under 18 U.S.C. § 3142(f), and temporary release warranted under 3142(i). 19-CR-356, Dkt. 50. With respect to reconsideration under § 3142(f), Judge Ross found that "the COVID-19 crisis—and the heightened risk that it poses to Jackson as an asthma sufferer detained in a facility where the virus is present—is new information that has material bearing on whether any conditions of release will reasonably assure Jackson's appearance and the safety of the public." *Id.* at 2.

While the government acknowledges that "the COVID-19 pandemic is, of course, a new factor not previously considered", Gov. Opp. at 3, it claims the pandemic has no material bearing on whether conditions of release could reasonably assure his appearance and safety to the community. *Id*. The government does not address Mr. Mirvis' arguments on this point. *See* Def. Mot. 3-5. Instead, the government simply restates the allegations and cites the prior rulings by magistrate judges.[7] Gov. Opp. at 2.

---

[6] Obesity Associated with Severe Coronavirus Disease, Especially in Young Adults, The New York Times (April 16, 2020), *https://www.nytimes.com/2020/04/16/health/coronavirus-obesity-higher-risk.html*.

[7] As charged, the alleged offense conduct indeed is egregious. But it is worth noting that Judge Pollak's conclusion appeared to rest in part on the erroneous belief that in addition to the allegations in the complaint, Mr. Mirvis had also possessed child pornography. *See* ECF No. 8 at 9.

3

Conditions can reasonably assure the safety of the community where the "only potential danger [the defendant] poses to the community is through the Internet." *United States v. Deutsch*, 18-CR-502 (FB), Dkt. 20 at 4 (E.D.N.Y. December 13, 2018) (holding that the government had failed to meet its burden of proving by clear and convincing evidence that no conditions could reasonably assure the community's safety). Like *Deutsch*, the government's argument here is premised on the notion that Mr. Mirvis, despite restrictions, could theoretically access the internet. Gov. Opp. at 4. But the Bail Reform Act requires only reasonable assurance of lack of danger to society, not an absolute guarantee. 18-CR-502, Dkt. 20 at 4. Notably, the government does not provide an example of how Mr. Mirvis would be able to access the Internet while subject to home confinement, location monitoring, strict conditions including no unsupervised access to the Internet.

The government's primary argument that Mr. Mirvis is a risk of flight is that he faces a lengthy sentence if convicted. Gov. Opp. at 4. The government's conclusory statement that Mr. Mirvis' incentive to flee has increased during his three years in custody, Gov. Opp. at 4, is illogical, because whatever sentence he might receive, if convicted, three years of served time would be applied to it.

The government's cited "growing body of cases" denying bail during the COVID-19 pandemic are inapposite. *See* Gov. Opp. at 4 (citing five cases). All predate the recent disclosures about MDC's current conditions, and their findings emphasize dangerousness based on acts of violence; positions of authority within a criminal organization; use of firearms; prior criminal conduct; evidence of witness tampering; or the prior use of proxies to commit crimes.

For these reasons, Mr. Mirvis has rebutted the presumption in 18 U.S.C. § 3142(e)(3).

**B.      Temporary Release**

The government sets forth the erroneous standard that temporary release must be supported by "exceptional circumstances". Gov. Opp. at 5. The bail statute requires no such finding. Under the temporary release provision, a defendant may be released from pretrial detention to the custody of an appropriate person "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

The government argues that preparation of Mr. Mirvis' defense is not a compelling reason for his release absent an imminent proceeding and where MDC has employed protocols for legal calls. Gov. Opp. at 5. First, an imminent proceeding is not required. *See, e.g., United States v. Nunez*, 20 MAG 1734 (KP) (S.D.N.Y. April 20, 2020) (temporary release from MCC New York was warranted by defendant's need to discuss a plea offer with counsel due to the lack

Honorable Frederic Block  *United States v. Mirvis*, 17 Cr. 273 (FB)
April 28, 2020

of video and phone equipment for private consultation*). See also United States v. Kennedy*, No. 18-CR-20315 (E.D. Mich. March 27, 2020) (temporary release granted where defendant had a bond hearing June 4, 2020 and sentencing hearing July 28, 2020).  Contrary to the government's assertions, the cases Mr. Mirvis cited in support do not hinge on the imminence of the proceedings. *See* Gov. Opp. at 5, Def. Mot. at 5.  The scheduling orders issued in each case make clear that no proceeding would take place for months.  *See, e.g., United States v. Hudson*, No. 19-CR-496 (CM), Minute Entry, March 20, 2020 ("The matter is scheduled for May 27, 2020, at 4:30, to review bail conditions and set a trial date.").  Indeed, the court in *Chandler* expressly contemplated the likelihood of delay. *United States v. Chandler*, No. 19-CR-867 (PAC), Dkt. No. 19 at 4 (S.D.N.Y. March 31, 2020) ("The Court is also unconvinced by the Government's argument that, because Chandler's trial is likely to be further delayed due to COVID-19, time preparing for his defense can simply be made up later.").

The government's additional argument that release is not necessary because BOP has "protocols designed to ensure [] defendants' telephonic access to counsel" Gov. Opp. at 5, fails to acknowledge what meaningful attorney-client communication require, and are contrary to what lawyers are experiencing.  The calls are limited in allotments, duration, not private, and basic matters, such as reviewing evidence cannot be done.  The protocols are simply not conducive to making important, informed, decisions.

The government argues, without support, that Mr. Mirvis' health conditions are less "serious" than other inmates' conditions, Gov. Opp. at 6, but that's a meaningless term here. The only relevant question is whether Mr. Mirvis has a condition identified by the Centers of Disease Control as increasing his risk of severe illness of death from COVID-19. The answer, clearly, is yes.  The fact that he is not on MDC's high-risk list, Gov. Opp. at 6, is of no moment; given MDC's track record, it only underscores the likelihood that MDC will fail to provide him with necessary care and treatment.

For the reasons, Mr. Mirvis is entitled to temporary pursuant to 18 U.S.C. § 3142(i).

        Respectfully submitted,

        s/ Michael Hueston
        Dorea Silverman

cc:    A.U.S.A. Drew Rolle