
**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DGR
F. #2017R00959

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 8, 2024

<u>By ECF</u>

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Ruslan Mirvis</u>
              <u>Criminal Docket No. 17-273 (S-1) (FB)</u>

Dear Judge Block:

      The government respectfully submits this letter in advance of the defendant Ruslan Mirvis' sentencing hearing, scheduled for October 11, 2024 at 3:00 PM. For the reasons set forth herein, the government respectfully asks the Court to impose a sentence of 30 years' (360 months') imprisonment. Such a sentence is necessary to account for the seriousness of the defendants' repeated sexual exploitation of at least 13 minor children over social media; to specifically deter this defendant from future crime and to protect the community. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

I.    <u>Background</u>

      On April 14, 2017, law enforcement received notification from the National Center of Missing and Exploited Children ("NCMEC") Cyber Tipline, that Facebook, Inc. ("Facebook") captured, obtained and reported over twenty sexually explicit pictures and videos involving children. Pre-Sentence Investigation Report ("PSR") ¶ 3. In connection with its NCMEC tip, Facebook provided records for multiple accounts, including messages, account information, among other things (the "Facebook Records"). Law enforcement agents reviewed the Facebook Records, which revealed that sexually explicit images of minors were sent between February 21, 2017 through April 9, 2017 from a Facebook account using a screen name "B.B." (the "B.B. Facebook"), which represented to be an account for a 16 year old boy.[1] <u>Id.</u> ¶ 4. Through the linking of "cookies" across Facebook account, among other things, law enforcement identified the

---

[1] Because the defendant's pseudonymous account was in the name of a minor child, it has been anonymized here as "B.B."

defendant as the user of the B.B. Facebook during the relevant period in which these images of child sexual exploitation were being transmitted. Id. ¶ 4.

As evidence obtained from the B.B. Facebook revealed, the defendant had created the B.B. Facebook and between February 21, 2017 and April 9, 2017, the defendant had used the account to communicate with at least 13 child victims in 12 different states, including New York, and enticed them to create images and videos of them sexually exploiting themselves and others at the defendant's direction. Id. ¶ 5. To ensure the minor victims complied with his directions, the defendant would use threats, stating that he would send the children's sexually explicit images to their parents or friends at their schools. Id.

A summary of the defendant's enticement of multiple child victims is set out below.

A. Jane Doe #1

At the time of the defendant's crimes, Jane Doe #1 was 12 years old. The defendant enticed Jane Doe #1 to create images of her sexually exploiting herself and sexually abusing her then-three-year-old sibling. Id. ¶ 6. On or about March 26, 2017, the defendant, using the BB Facebook, had the following exchange with Jane Doe #1:

DEFENDANT: put on tiny shorts on lay down video call slowly rub your thighs belly show me i can trust u after u done i will make u my girl and video call u after u done and take a pic of my self holding ur name

Jane Doe #1: i can't rn

DEFENDANT: or open ur legs with shorts on and take a pic make ur shorts tight

Jane Doe #1: ok

[Jane Doe #1 Transmits Image to the Defendant]

Jane Doe #1: like that?

DEFENDANT: cant see the shape

Jane Doe #1: of?

DEFENDANT: pussy

Jane Doe #1: um ok i'll try

\* \* \*

DEFENDANT: take your shorts of

[Jane Doe #1 Transmits Image to the Defendant]

DEFENDANT: dont hide your pussy take it of

Jane Doe #1: i don't think i should be doing this

DEFENDANT: im trying to make u my girl take it of

\* \* \*

[Jane Doe #1 Transmits Sexually Explicit Image to the Defendant]

2

On March 29, 2017, the defendant contacted Jane Doe #1 and threatened to send Jane Doe #1's family all the images Jane Doe #1 had sent the defendant. Id. ¶ 6. Jane Doe #1 pleaded with the defendant not to contact her family and continued communicating with him about his requests for sexually explicit images of her. During that time, the defendant directed Jane Doe #1 to take images of Jane Doe #1 sexually abusing her sibling, Jane Doe #2, who was three years old at the time. At the defendant's direction, and after the defendant claimed he would delete Jane Doe #1's photographs if she complied, Jane Doe #1 photographed and videotaped herself sexually abusing her toddler sibling, Jane Doe #2, repeatedly. As detailed in the PSR, Jane Doe #1 sent an image Jane Doe #2's vagina being physically manipulated by Jane Doe #1 hands. Id. ¶ 7. In the video sent to the defendant, Jane Doe #1 recorded herself licking Jane Doe #2's vagina. Id.

B. Jane Doe #3

Jane Doe #3 was 16 years old at the time of the defendant's crimes. Using the B.B. Facebook, the defendant enticed Jane Doe #3 to send him sexually explicit images of herself. On March 28, 2017, the defendant and Jane Doe #3 had the following exchange:

| | |
|---|---|
| DEFENDANT: | take your shorts on and your underwear and only put on the shorts |
| Jane Doe #3: | Put them on? |
| DEFENDANT: | only have shorts on no underwear |
| Jane Doe #3: | Okay |
| DEFENDANT: | open ur legs wide take a pic with shorts on so i know u have no underwear on |
| Jane Doe #3: | Okay one sec |
| | [Jane Doe #3 Transmits Image to the Defendant] |
| DEFENDANT: | lay down like that video call i want you to cum [redacted] will be here soon after u cum ill change and ill turn my cam on and will talk and u will see [redacted] and talk to him to and can i sing live for u |
| Jane Doe #3: | Okay |
| DEFENDANT: | call |
| Jane Doe #3: | Okay |
| DEFENDANT: | rub it hard baby |
| DEFENDANT: | pull aside your pussy lips baby |
| DEFENDANT: | pull them aside baby both out love |

C. Jane Does #4, #5, #6, #8, #10, and #14

Jane Does #4, #5, #8, #10, and #14 were each 16 years old at the time of the defendant's crimes. Jane Doe #6 was thirteen years old at the time of the defendant's crimes. At the defendant's direction, and after the defendant used similar language and gave explicit

3

instructions as set out above, each of Jane Does #4, #5, #6, #8, and #10 created and transmitted pictures and videos of each touching or penetrating their genitals. Id. ¶¶ 10-23.

D.  Jane Does #11 and #13

Jane Doe #11 was 14 years old at the time of the defendant's crimes. As with Jane Doe #1, the defendant sought to use Jane Doe #11 to obtain images of Jane Doe #11 sexually abusing her younger sibling. During the exchange, after telling Jane Doe #11 that he is "turn[ed] on when a girl gets turned on by there [sic] younger brothers," the defendant told Jane Doe #11 to rub her siblings stomach. Jane Doe #11 stated "Why do I have to do it" and "I want to kill myself." Id. ¶ 24. When Jane Doe #11 stated she would not touch her sibling, the defendant instructed her to send him images of her genitals, which Jane Doe #11 proceeded to send. Id. ¶¶ 24-25.

Jane Doe #13 was 16 years old at the time of the defendant's crimes. As with Jane Doe #11, after obtaining images of Jane Doe #13's breasts, he told Jane Doe #13 that he "love[d] girls th[a]t get [] turned on by there [sic] little brotheres [sic]," in apparent initial attempt at persuading Jane Doe #13 to follow instructions to touch and sexually abuse Jane Doe #13's sibling. Id. ¶ 28.

E.  The Defendant's Arrest and Detention

On April 21, 2017, FBI agents arrested the defendant at his home in Brooklyn, New York. Id. ¶ 32. The defendant admitted much of this conduct during a post-arrest interview with FBI agents, including that he created the Facebook account at issue and used it to communicate with minors; that he directed minors to take photos and videos of themselves engaged in sexually explicit conduct; that he would threaten those victims in connection with his production of child pornography.[2] The defendant was arraigned and ordered detained. At the initial stages of the defendant's case, reflecting the seriousness of the defendant's charged conduct, Magistrate Judge Cheryl Pollak observed that this case presented "perhaps the most heinous series of allegations relating to child pornography that I have seen and I've been doing this now for quite a while." (May 12, 2017 Tr. at 9:5–17.)



---

[2] The defendant's post-arrest statements were not provided to Probation, which was an error. The PSR at paragraph 32 should be updated to reflect the defendant's post-arrest admissions.

4

II. The Guidelines Calculation

The parties' plea agreement and the PSR find the same applicable Guidelines range—life imprisonment—but apply divergent approaches to arrive at that result. The plea agreement treats the enticement of Jane Doe #1 through Jane Doe #11 as separate counts, applies relevant enhancement to each count, and arrives at an adjusted offense level, after acceptance, of 51 and a resulting Guidelines range of life. The defendant stipulated to that calculation. Plea Agreement ¶ 2. The PSR reaches its Guidelines range of life, but only considers the enticement of Jane Does #1 and #2, stating that only Jane Doe #1 was named in the Information. PSR ¶ 41. Although Jane Doe #1 is specifically mentioned in the Information, the parties' intent, as reflected in the stipulated Guidelines range, was to include the enticement of each victim in the Guidelines calculation. Nevertheless, because this difference has no bearing on the resulting Guidelines range—which remains life imprisonment—the Court need not resolve this issue at sentencing.

Notwithstanding that the defendant agrees the Guidelines range is life imprisonment (and that he stipulated to that range), his sentencing submission argues that this range is overstated. Citing United States v. Dorvee, the defendant argues that the Sentencing Guidelines overstate the seriousness of his offense and result in unreasonable sentences. Def. Ltr. 16-18. What the defendant fails to acknowledge is that Dorvee had nothing to do with the Guidelines provision that applies in this case. In Dorvee, the Second Circuit discussed U.S.S.G. § 2G2.2, which applies to the possession, transfer, and distribution of child pornography, and the court noted a potential risk—absent careful 3553(a) balancing—that unreasonable sentences could result in child pornography possession and distribution cases. Dorvee, 616 F.3d at 186. But that is not this case. The defendant pled guilty to enticing minors into illegal sexual conduct, in violation of 18 U.S.C. § 2422(b). As correctly stated in the PSR, U.S.S.G. § 2G2.1 (not 2G2.2) applies here. PSR ¶ 40.

Accordingly, Dorvee and its commentary have no application to the defendant's crime. Unlike the child pornography possession in Dorvee, where the Circuit noted that many cases involve identical conduct triggering the same enhancement regardless of the scope of the scheme, here, enticement is a hands-on, victim-specific crime, meaning that in each case the scope of the conduct is identifiable. Given the hands-on nature of this offense, enticement is also treated more seriously, as reflected in the Base Offense Level of 32. Applying the various enhancements set out in the PSR, the applicable Guidelines range—and the starting point for the Court's sentencing determination—is life imprisonment.

II.     Analysis

The government respectfully submits that a sentence of imprisonment for 30 years (360 months) is sufficient, but not greater than necessary, to achieve the purposes of sentencing in this case. This sentence, which is five years above the 300 month recommendation from Probation, and still constitutes a variance from the applicable life imprisonment Guidelines, is appropriate given the seriousness of the defendant's predatory conduct; the need to deter future crimes by him and others; ██████████████████████████████████████ and to provide just punishment for an offense that, at bottom, was shocking and perpetrated immense and irreversible harm to the child victims, their families and their loved ones.

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted); see also United States v. Sampson, 898 F.3d 287, 313 (2d Cir. 2018).

Title 18, United States Code, Section 3553(a) lists numerous factors that a Court "shall consider" in imposing a sentence. These factors include, inter alia, "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)-(2).

As Judge Pollak observed from the earliest stages of this case, the defendant's criminal conduct is among the most heinous. The defendant is a child predator. He identified child victims online, posed as a peer to gain their trust, and exploited them for his own gratification, including by directing them to sexually exploit other minor children and videotape that sexual abuse for his enjoyment. He did this repeatedly. The collateral effects of the defendant's crimes cannot be overstated. Each of his victims has been harmed immensely and immutably. He has destroyed a part of them; they will never live a life free from the burden he placed upon them. The regret, shame, and fear they feel is clear even in their initial conversations with the defendant during his scheme. The tragic consequence of his scheme is clear from the immediate aftermath of his conduct when at least one child attempted self-harm upon the discovery of his crimes.

The loss the victims have, and will continue to suffer, is also incalculable. The Guidelines, in their own way, are an imperfect tool for attempting to do that; and even under the most generous version of those Guidelines, the defendant's applicable range is life imprisonment. Probation rightly notes that the defendant's requested 10-year sentence—the mandatory minimum sentence authorized by Congress—is wholly inappropriate in this case. Probation makes plain what happened here: the defendant targeted "some of the most vulnerable members of the community, for [his] own sexual gratification, all without regard for the wellbeing of the children." Prob. Sentencing Rec. 4. Given the manner he executed the scheme over social media, "the

6

defendant exerted such little effort yet yielded such maximum harm against [the victims]." Id. at 5.

A sentence of 30 years, while still a substantial variance from the Guidelines range, would help avoid unwarranted sentencing disparities. The defendant's requested 10-year sentence would immediately create a substantial and unwarranted disparity given the sentences received by other defendants in this district who victimized fewer children. See, e.g., United States v. Burgos-Collazo, No. 20-CR-492 (E.D.N.Y. Sept. 5, 2024) (45 years' imprisonment for registered sex offender who enticed seven child victims); United States v. Vega, No. 21-CR-563 (EK) (E.D.N.Y. Mar. 15, 2023) (16 years' imprisonment for enticing three child victims); United States v. Rizo, No. 17-CR-283 (JS) (E.D.N.Y. Dec. 20, 2022) (17 years' imprisonment for enticing one child victim); United States v. Gallimore, 18-CR-363 (JS) (E.D.N.Y. May 20, 2022) (12 years' imprisonment for enticement of one child victim); United States v. Caroleo, No. 17-CR-177 (ENV) (E.D.N.Y. Mar. 2, 2022) (30 years' imprisonment—the statutory maximum—for enticement of nine known victims); United States v. Palmer, No. 19-CR-556 (CBA) (E.D.N.Y. July 29, 2021) (more than 21 years' imprisonment for enticement of one child victim); United States v. Arroyo, No. 16-CR-376 (JBW) (E.D.N.Y. Mar. 18, 2018) (10 years' imprisonment for enticement of one child victim).

The defendant's sentencing submission does not grapple with any of these issues and all but ignores his criminal conduct, spending a total of four sentences addressing the truth of what he did. See Def. Ltr. 12. But even in those few sentences, he points to a strawman to distract the court by making counterfactual observations of what he didn't do as if they mitigated what he did do. Id. (noting that the defendant "did not meet the victims in person" or "distribute the images or videos to others."). In addition, while attempting to elide the underlying facts, the defendant also mischaracterizes them by suggesting he somehow did not hide his criminal conduct because he "employed no efforts to hide his IP address" and logged into his personal account at the same time as his pseudonymous BB Facebook account. Def. Ltr. 13. This claim is disingenuous. That the defendant was sloppy in his efforts to hide his crime in no way undercuts the fact that he took considerable efforts to conceal the truth from his victims, their parents, and law enforcement. He coopted the identity of a real child in perpetrating his crimes; that he did not "hide his IP address" in the process is completely irrelevant.



In assessing the history and characteristics of the defendant, each of the mitigating factors identified by the defendant is properly accounted for in the government's 30-year sentencing recommendation. Indeed, Probation's recommendation expressly addressed these mitigants, and maintained their recommendation of 25 years' imprisonment. The defendant's mitigation submission largely repeats the factual narrative the defendant sets out in his sentencing submission, and it does little to tie this personal history to the charged crime. The submission does make the generalized claim that "[s]exual offending in individuals with cognitive impairments can affect a person's ability to understand social norms, regulate impulses, and comprehend the consequences of their actions, which may increase the risk of engaging in sexually harmful behaviors." Bulkin Report 3. This assessment seems to miss the mark as to the defendant and the behaviors in which he engaged.

The defendant undertook a deliberate plan to conceal his true identity and pose as a child to increase the likelihood that fellow children would place trust in a peer and be more inclined to communicate with him. Then, while pretending to be a child, he secured trust with multiple children and repeatedly exploited it, even resorting to violent threats, to get those children to sexually exploit themselves and others. These actions reflect someone who quite clearly understood certain norms—the trusting nature of children when dealing with a perceived peer (as opposed to an unknown adult man)—and also comprehended that what he was doing was wrong, as chose to hide it completely.

In support of his 10-year sentence request, the defendant also relies on the report submitted by Dr. N.G. Berrill. But that report suffers from a number of issues that undermine the utility the defendant places in it, most of which were caused by the defendant's apparent lack of candor with Dr. Berrill. The report recounts the defendant's statements to Dr. Berrill about the instant offense, which bear little resemblance to the crimes he actually committed. Although, as set out above (and not disputed by the parties), the defendant abused multiple child victims, according to Dr. Berrill's report, the defendant claimed that his criminal case related to a single child and "that he had conversations online and made video contact with [this] one adolescent." Berrill Rep. 8. This disconnection from reality is also underscored in one of Dr. Berrill's conclusions: that "[w]hen Mr. Mirvis was initially evaluated, he was extremely defensive and loath to acknowledge the reality of his involvement in the instant offense." Berrill. Rep. 16.

Finally, the other 3553(a) factors each support a sentence of 30 years' imprisonment. Since the time of the defendant's arrest, and as the sentences imposed for similar conduct in subsequent years reflects, this type of sexual predation of children over the Internet has increased substantially. This highlights the need for both specific and general deterrence to send a message that this type of online predation will be met with substantial punishment in the form of decades of imprisonment.

III. Conclusion

The defendant preyed on young children over social media, sexually exploiting them and even a toddler sibling virtually. His conduct was shocking and abhorrent and requires a substantial sentence of imprisonment to achieve the goals of sentencing. For all of the reasons set forth above, the Court should sentence the defendant to 30 years (360 months) imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/Drew G. Rolle
Drew G. Rolle
Assistant U.S. Attorney
(718) 254-6783

cc: Michael Hueston, Esq. (Counsel to the defendant) (by ECF)
Dorea Silverman, Esq. (Counsel to the defendant) (by ECF)